THOMASTON BANK *versus* ELIZABETH K. STIMPSON.

A deed of land, absolute and unconditional in its terms, but made, as appears by minutes of the grantees in managing their own affairs, to secure the payment of a loan of money, is not by our statutes a mortgage; and when the time stipulated for the payment of the money has elapsed, and payment has not been made, the estate becomes absolute in the grantees; although a Court having general equity jurisdiction might regard such a conveyance as a mortgage.

Banks, incorporated under the laws of this State, may receive real estate as security for a loan, or in payment of debts due.

And if land be conveyed to a bank as collateral security for the payment of money, and the title has become absolute in the bank by the neglect of the grantor to make payment *at the stipulated time; and afterwards, at the request* of the grantor, the bank conveys the land to a third person, on payment by the latter of the amount due; this is not a redemption of the property, so as to restore the title to the original grantor.

And if a purchaser, *bona fide*, of the grantee of the bank without the knowledge of usury in any transaction in relation thereto, brings his writ of entry, demanding the land, against one who was not a party or the legal representative of a party to the usury, it is not competent for the latter to set up as a defence, that there was usury in the transactions between the person requesting the conveyance and the grantee of the bank.

The liability of one who had been a stockholder in the bank, but who had sold out his interest three months before he was offered as a witness for the bank, is too remote, uncertain and contingent to render him incompetent.

WRIT of entry to recover a tract of land in Thomaston. The demandants read in evidence an absolute and unconditional deed of warranty of the demanded premises from Elizabeth Sawyer and Brown Stimpson to themselves, dated March 10, 1828. The consideration of the deed was $1075. It appeared during the trial, from the stockholders' minutes under date of March 19, 1828, introduced by the tenant, that the land was received by the bank as collateral security for the payment of the note of Mrs. Sawyer and Stimpson to the bank for $1075. There was also read in evidence a deed of the same premises from the bank to S. E. Smith, dated June 4, 1838; a deed from S. E. Smith to John G. Paine, dated Sept. 3, 1838; a deed from John G. Paine to the bank, dated June 5, 1839, for the consideration of $1451,76. The actual consideration of the last deed was to indemnify the bank, as far

as it would, for his deficiencies as their cashier. The grantee of the bank had given Stimpson a bond to convey the land to him on the payment of a certain sum; Stimpson assigned the bond to John Paine, John Paine assigned it to John G. Paine, and on his paying Smith the amount due him, he conveyed to J. G. Paine. In one of these intermediate transactions the defendant contended there was usury, and the demandants that there was not. The tenant was the widow of Brown Stimpson and the daughter of Mrs. Sawyer. A witness was called by the demandants who had been a stockholder of the bank, and director, but had sold out his stock three months before he was called to testify. He was objected to as interested, but was admitted by SHEPLEY J. presiding at the trial. The Judge ruled, that as the defendant was not a party to any contract between B. Stimpson and the grantee of the demandants, and was not making the defence as his legal representative, she could not set up usury as a ground of defence. The defendant consented to be defaulted, subject to the opinion of the Court on the whole case.

*Holmes,* argued for the defendant, and among other objections to the maintenance of the action urged these: —

The whole transaction between Stimpson, Mrs. Sawyer and the demandants was a loan, and security therefor, and of course in law was a mortgage. 2 Black. Com. 296, and notes; 9 Wend. 296; 2 Mass. R. 493; 3 Mass. R. 138; 5 Mass. R. 109; 1 Salk. 192; 1 And. 196.

When the money was paid, the mortgage was discharged, and the land was revested in Mrs. Sawyer, the original owner. When the redemption was made, the equity did not go to Stimpson, but to Mrs. Sawyer. 1 Vern. 476; 1 Johns. Ch. R. 1; 1 Peere Wms. 268; 2 Atk. 494; Powell on Mort. 31; 2 Munf. 40; 5 Mass. R.117; 4 Johns. R. 186; 8 Mass. R. 157; 2 Desaus. 570; 2 Vern. 84; 1 Cow. 311.

The bank had no legal title to the demanded premises. The deed from Mrs. Sawyer and Stimpson to the bank was an absolute deed. If any thing, it is a purchase of real estate, and the deed was read as such. It was not a purchase for

Thomaston Bank *v.* Stimpson.

banking purposes or for the convenient transaction of their business. They purchased this property, as appears by their own records, as a pledge for the payment of money, and in case of failure, to sell it, pay themselves, and return the surplus. Such a transaction is void as against the policy of the law, and the express terms of the charter of the bank. If the bank cannot hold, they cannot transfer the title to others, and when it comes back to them, they are in their original position. The deed to the bank was absolutely void, and the bank can derive no title under it. The powers of corporations are mere statute grants, and nothing can be done by them beyond the authority granted to them. The charter of the demandants does not authorize them to purchase lands for such purposes. To decide that they have more power than the charter gives them, is but judicial legislation.

The transaction was usurious, and as heir to Mrs. Sawyer, the tenant may set up this defence.

The witness was improperly admitted. Although he had sold out his shares, his liabilities to make good all deficiencies of the bank remained. He was directly interested, therefore, to increase the funds of the bank.

*Ruggles* and *M. H. Smith*, for the plaintiffs, were stopped by the Court.

The opinion of the Court was drawn up by

WHITMAN C. J. — The deed of Mrs. Sawyer and Brown Stimpson was made to the bank absolute and unconditional in its terms. It is contended, by the counsel for the defendant, that the bank could not take and hold real estate by a deed of this description, other than for its own accommodation and particular use. It appears on the minutes of the proceedings of the directors of the bank, sometimes called their records, that the deed was made to secure the payment of a loan, obtained by said Brown Stimpson of the plaintiffs; and no question is in fact made but that this was the real object of the transfer. No doubt can be entertained but that a Court, having general equity jurisdiction, would regard such a con-

veyance as a mortgage. But the statute of this State, concerning mortgages, has entrusted the Courts with very limited powers on this subject; and is specific as to the cases in which a right of redemption shall remain to the grantor, beyond the time stipulated in the mortgage. In the case of mortgages of this description no such right is saved to him; and when the time, stipulated for the payment of the money, had elapsed, and payment had not been made, the estate became absolute in the grantees, so that they might alienate the estate to reimburse the amount of the loan.

By the statute of 1831, c. 519, $ 2 and 6, banks were authorized to hold real estate for their own accommodation; and such other real estate as they might "hold on mortgage, receive on execution, or take as *security* for, or in payment of any debts." The real estate in question was, in the first instance, received as security for a loan, and finally in payment, for a debt due. These purchases, in both instances, would seem to be within the very terms of the statute. No question therefore would seem to remain, but that the bank conducted, in both instances, within the scope of its legitimate powers.

In the sale of the estate the plaintiffs appear to have conducted with entire good faith. They allowed Brown Stimpson to find a purchaser, and to secure *to himself* all possible benefit from the sale, beyond the amount requisite to replace the money borrowed; and he received from the purchaser a stipulation to convey the land to him, within a certain term agreed upon between them, upon his paying to the purchaser the amount paid to the plaintiffs, being only the amount due them, together with the amount of a further loan obtained by him upon the same security, with interest on both sums.

The counsel for the defendant contends, that this transaction was tantamount to a redemption of the estate from the plaintiffs; and that it thereupon revested in Mrs. Sawyer, who was the real owner of it in fee at the time she joined her son-in-law, Brown Stimpson, in a conveyance of it to the plaintiffs. But we do not perceive any ground upon which it can be so

considered. The estate had become absolute in the plaintiffs, and irredeemable by our law. The grantors were unable to pay the amount for which it had become forfeited. It was sold and conveyed by the plaintiffs to a stranger to the original transaction, with the approbation, and indeed by the procurement, of Brown Stimpson, and without the slightest complaint, so far as appears, on the part of Mrs. Sawyer. The vendee of the plaintiffs therefore must be deemed to have acquired a perfect title to the estate.

The counsel for the defendant further contends, that the transaction, between Brown Stimpson and the plaintiffs' vendee, was usurious and therefore void. How that may have been it seems to us unnecessary to inquire. The estate must have vested in the vendee, and could not have been divested out of him by any usurious transaction between him and Brown Stimpson. Being thus vested, he conveyed it to one Paine, to whom Brown Stimpson had assigned his obligation for a conveyance to himself; and subsequently Paine, as cashier to the bank, having become a defaulter, conveyed the same to the plaintiffs, in part payment for the amount found to be due from him. It is not pretended that Paine or the plaintiffs were conusant of the supposed usurious transaction, or had any connection with it. We cannot doubt, therefore, that, in the hands of the plaintiffs, the estate is entirely clear of any taint of that kind.

It is further objected, that some of the facts in the case were proved by incompetent testimony, which, though objected to, was admitted by the Court. It is contended, that Edwin Smith, from whom this testimony was derived, had an interest in the event of the suit. It appeared that he had been a stockholder and director in the bank; but, some few months before he testified, he had sold his stock, and must thereupon have ceased to be a director. It was then contended, that he stood liable, for the term of one year after the sale, to be called upon to the amount of his stock, so sold, for the debts of the bank, in case of the mismanagement of the directors, and their inability to reimburse the loss, &c. This liability was re-

Thomaston Bank *v.* Stimpson.

mote, uncertain and contingent. It depended upon such a loss of the stock, by the mismanagement of the directors, as rendered it impossible for the creditors of the bank to obtain remuneration therefrom, and upon the further contingency, that the directors should be unable to respond therefor; and still further, that a suit should have been commenced within one year, next after the sale of the stock, by any such creditor. But there is a still more incontrovertible answer to the defendant's exception to the ruling of the Judge in this particular. The statute of 1839, c. 418, § 1, and the Revised Statute c. 77, § 76, both provide, that a stockholder, so liable, may nevertheless, be a competent witness in any case in which the bank may be interested.

On the whole, it seems to us, that the default must remain undisturbed; and that judgment must be entered thereon.